UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HECTOR FIGUEROA, President, SEIU Local
32BJ, CTW, CLC,

                              Plaintiff,

     – against –

HELEN DIANE FOSTER, Commissioner, New
York State Division of Human Rights,

                              Defendant.

No. 14-cv-8796 (GHW)

**CORRECTED MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Defendants
120 Broadway
New York, New York 10271
(212) 416-6696

ANGEL M. GUARDIOLA II
Assistant Attorney General

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................. 1

LEGAL AND FACTUAL BACKGROUND ............................................................... 1

    A.   Division Procedures ........................................................................... 1

    B.   Local 32BJ Before the Division ........................................................ 4

ARGUMENT ............................................................................................................... 5

I.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE FEDERAL DUTY OF FAIR REPRESENTATION DOES NOT PREEMPT THE DIVISION'S ENFORCEMENT OF EMPLOYMENT DISCRIMINATION STATUTES .................................................................................................. 5

    A.   Congress Intended Discrimination Claims to Exist Independently of Duty of Fair Representation Claims and for State Agencies to Take the Lead in Enforcement of Discrimination Claims ................................................. 6

    B.   The Supreme Court Has Never Held that the Duty of Fair Representation Preempts State Substantive Law ........................................................ 12

    C.   Circuit Court Decisions Holding that State Substantive Law Is Preempted by the Duty of Fair Representation Are Not Supported by Supreme Court Precedent ........................................................................................ 15

    D.   District Courts Finding Preemption of State Law by the Duty of Fair Representation Rely on Cases That Are Not Supported by Supreme Court Precedent ........................................................................................ 19

II.    PLAINTIFF DOES NOT SATISFY THE REQUIREMENTS FOR GRANTING A PERMANENT INJUNCTION ................................................................... 20

    A.   Plaintiff Does Not Show that Local 32BJ Suffered Irreparable Harm ................. 21

    B.   The Balance of Equities Does Not Tip in Plaintiff's Favor and the Public Interest Weighs Against Granting a Permanent Injunction ...................... 22

III.    *YOUNGER* ABSTENTION APPLIES TO THE PENDING ADMINISTRATIVE
ENFORCEMENT PROCEEDING ................................................................................. 23

IV.    PLAINTIFF'S PROPOSED INJUNCTION IS UNNECESSARY BECAUSE THE
DIVISION ALREADY HAS A MECHANISM BY WHICH IT CAN IDENTIFY
CLAIMS IMPLICATING THE DUTY OF FAIR REPRESENTATION .................... 24

CONCLUSION ......................................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)...........................................................................................10

*Adkins v. Mireles*,
    526 F.3d 531 (9th Cir. 2008) .........................................................................17

*Agosto v. Correctional Officers Benevolent Ass'n*,
    107 F. Supp. 2d 294 (S.D.N.Y. 2000)............................................................10

*Aledide v. Barr*,
    607 F. Supp. 281 (S.D.N.Y. 1985) .................................................................19

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974)............................................................................................7

*Allis Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985)........................................................................................17

*Altria Group v. Good*,
    555 U.S. 70 (2008)............................................................................................5

*Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v.*
    *Lockridge*,
    403 U.S. 274 (1971)........................................................................................18

*Amoco Production Co. v. Village of Gambell*,
    480 U.S. 531 (1987)........................................................................................20

*Boykin v. Key Corp*,
    No. 03-CV-944S, 2005 U.S. Dist. LEXIS 5546 (W.D.N.Y. Mar. 28, 2005) ..........................24

*Carter v. Smith Food King*,
    765 F.2d 916 (9th Cir. 1985) .........................................................................19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..........................................................................................5

*Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene*,
    763 F.3d 183 (2d Cir. 2014)...........................................................................20

*Condon v. Local 2944, United Steelworkers of America, AFL-CIO, CLC*,
    683 F.2d 590 (1st Cir. 1982) .....................................................................15, 17

*English v. General Electric Co.*,
496 U.S. 72 (1990) .............................................................................................6

*Farmer v. ARA Services, Inc.*,
660 F.2d 1096 (6th Cir. 1981) ..........................................................................10

*Farmer v. United Brotherhood of Carpenters & Joiners, Local 27*,
430 U.S. 290 (1977) ..........................................................................................19

*Ford Motor Co. v. Huffman*,
345 U.S. 330 (1953) ............................................................................................7

*Ford v. Bernard Fineson Development Center*,
81 F.3d 304 (2d Cir. 1996) .................................................................................8

*Freightliner Corp. v. Myrick*,
514 U.S. 280 (1995) ............................................................................................6

*Fristoe v. Reynolds Metals Co.*,
615 F.2d 1209 (9th Cir. 1980) ..........................................................................19

*Fund v. City of New York*,
No. 14 Civ. 2958 (KPF), 2014 U.S. Dist. LEXIS 68509 (S.D.N.Y. May 19, 2014) ...............23

*Goodman v. Lukens Steel Co.*,
482 U.S. 656 (1987) ..........................................................................................10

*HSBC Bank USA v. N.Y.C. Commission on Human Rights*,
673 F. Supp. 2d 210 (S.D.N.Y. 2009) ..........................................................23, 24

*Int'l Ass'n of Machinists v. Gonzales*,
356 U.S. 617 (1958) ....................................................................................13, 16

*J. & W. Seligman & Co. v. Spitzer*,
No. 05 Civ. 7781 (KMW), 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) ...........24

*Jackson Hewitt Tax Service Inc. v. Kirkland*,
455 F. App'x 16 (2d Cir. 2012) ........................................................................23

*Kremer v. Chemical Construction Co.*,
456 U.S. 461 (1982) ...............................................................................7, 8, 9, 23

*Lingle v. Norge Division of Magic Chef, Inc.*,
486 U.S. 399 (1988) ..................................................................12, 16, 17, 18

*Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*
377 U.S. 252 (1964) ..................................................................15, 16, 17

*Local 761, Int'l Union of Electrical, Radio & Machine Workers, AFL-CIO v. NLRB*,
    366 U.S. 667 (1961) ................................................................................16

*Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin*
    *Employment Relations Commission*,
    427 U.S. 132 (1976) ................................................................................16

*Maynard v. Revere Copper Products, Inc.*,
    773 F.2d 733 (6th Cir. 1985) ..................................................................18

*McDonald v. Santa Fe Trail Transportation Co.*,
    427 U.S. 273 (1976) ................................................................................10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ...........................................................................5, 6, 11

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ............................................................................7, 11

*Metropolitan Life Insurance Co. v. Massachusetts*,
    471 U.S. 724 (1985) ................................................................................16

*Mohasco Corp. v. Silver*,
    447 U.S. 807 (1980) ...........................................................................7, 9, 22

*Morris v. City of New York*,
    No. 05 Civ. 7368 (PKC), 2007 U.S. Dist. LEXIS 14765 (S.D.N.Y. Mar. 1, 2007) ...............24

*NLRB v. Miranda Fuel Co.*
    326 F.2d 172 (2d Cir. 1963) ..................................................................12

*Ohio Civil Rights Commission v. Dayton Christian School, Inc.*,
    477 U.S. 619 (1986) ................................................................................23

*Olguin v. Inspiration Consolidated Copper Co.*,
    740 F.2d 1468 (9th Cir. 1984) ................................................................19

*Oliva v. Wine, Liquor & Distillery Workers Union, Local One*,
    651 F. Supp. 369 (S.D.N.Y. 1987) .........................................................19

*Parker v. Metropolitan Transportation Authority*,
    97 F. Supp. 2d 437 (S.D.N.Y. 2000)......................................................10

*Red Earth LLC v. United States*,
    657 F.3d 128 (2d Cir. 2011)....................................................................20

*Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*,
    375 U.S. 96 (1963) ...................................................................................6

*Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218 (1943)............................................................................1, 5

*Richardson v. United Steelworkers of America*,
864 F.2d 1162 (5th Cir. 1989) .............................................................15

*Salinger v. Colting*,
607 F.3d 68 (2d Cir. 2010)................................................................20, 22

*San Diego Building Trades Council v. Garmon*,
359 U.S. 236 (1959)........................................................................12, 15

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983)...........................................................7, 9, 10, 22, 23

*Sipes v. Vaca*,
397 S.W.2d 658 (Mo. 1965) ..............................................................12, 13

*Sprint Communications, Inc. v. Jacobs*,
134 S. Ct. 584 (2013)...........................................................................23

*Terminix Int'l Co. v. Rocque*,
210 F. Supp. 2d 97 (D. Conn. 2002) ......................................................24

*Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industry of U.S. & Canada, Local 704*,
25 F.3d 1308 (6th Cir. 1994) ...........................................................6, 18

*Union Free School District No. 6 v. New York State Human Rights Appeal Board*,
35 N.Y.2d 371 (1974) ............................................................................3

*United Steelworkers of America, AFL-CIO-CLC v. Rawson*,
495 U.S. 362 (1990)........................................................................17, 18

*Vaca v. Sipes*,
386 U.S. 171 (1967)............................................5, 12, 13, 14, 15, 17

*Welch v. General Motors Corp., Buick Motor Division*,
922 F.2d 287 (6th Cir. 1990) .................................................................18

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)............................................................................20, 22

*Wrobbel v. Asplundh Constr. Corp.*,
549 F. Supp. 2d 868 (E.D. Mich. 2008).....................................................6

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................................................................5, 14, 20

*Younger v. Harris*,
    401 U.S. 37 (1971)................................................................23

**Federal Statutes**

29 U.S.C.
    § 157...........................................................................12, 13
    § 158...........................................................................12, 13
    § 185...............................................................................17
    § 623...............................................................................11
    § 625.................................................................................8
    § 633.............................................................................6, 11

42 U.S.C.
    § 2000e-2 ....................................................................6, 7, 11
    § 2000e-4 ..........................................................................7
    § 2000e-5 .....................................................6, 7, 8, 9, 23, 25
    § 2000e-6 ..........................................................................7
    § 2000e-7 .......................................................................6, 11
    § 2000e-8 ..................................................................1, 7, 8, 22
    § 2000e-9 ..........................................................................7
    § 12112.............................................................................11
    § 12117...........................................................................7, 8
    § 12201.........................................................................6, 11

Age Discrimination in Employment Act of 1967,
    Pub. L. No. 90-202, 81 Stat. 602 ......................................7

Civil Rights Act of 1964,
    Pub. L. No. 88-352, 78 Stat. 241 .......................................6

Labor Management Relations Act of 1947,
    Pub. L. No. 80-101, 61 Stat. 136, 158–59 .......................16
    § 301.........................................................................17, 18, 19
    § 303...............................................................................16

**Federal Rules and Regulations**

Fed. R. Civ. P. 56.........................................................................5

**Federal Administrative Determinations**

*Miranda Fuel Co.*,
    140 N.L.R.B. 181 (1962) .................................................12

**Federal Administrative Publications**

U.S. Equal Employment Opportunity Commission,
*EEOC Charge Receipts by State (includes U.S. Territories) and Basis for 2014* ...................10

U.S. Equal Employment Opportunity Commission,
*Jurisdictional Area*.......................................................................................................................9

**State Statutes**

Michigan Compiled Laws Annotated
§ 37.1204.......................................................................................................................................18

New York Executive Law
§ 296.........................................................................................................................................2, 11
§ 297...........................................................................................................................................2, 3
§ 298.....................................................................................................................................3, 21, 25

**State Rules and Regulations**

9 N.Y.C.R.R.
§ 465.3 ...........................................................................................................................................2
§ 465.4 .........................................................................................................................................21
§ 465.5 ...........................................................................................................................................3
§ 465.8 ...........................................................................................................................................3

**State Administrative Publications**

New York State Division of Human Rights,
*Contact Us* ...................................................................................................................................9

## PRELIMINARY STATEMENT

The New York State Division of Human Rights ("Division") is empowered by federal and state statutes to investigate allegations of discriminatory conduct by labor organizations. In this action, Service Employees International Union Local 32BJ ("Local 32BJ") seeks to be permanently exempted from the Division's oversight in its dealings with bargaining unit members, invoking the doctrine of federal preemption. Summary judgment in Defendant's favor should be granted because Local 32BJ cannot identify any federal statute evincing the "clear and manifest purpose of Congress" that the judge-made duty of fair representation preempt the New York State Human Rights Law ("Human Rights Law"). *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1943). Moreover, Plaintiff's request for a permanent injunction should be denied. Local 32BJ is not suffering irreparable harm due to the Division's activities. The harm to the Division and individual union members in stripping the Division of its power to enforce the Human Rights Law outweighs any harm to Local 32BJ. Finally, an injunction is not in the public interest because it would deprive over 81,000 individuals working in New York from bringing discrimination claims in the state forum, as intended by Congress.

## LEGAL AND FACTUAL BACKGROUND

### A.     Division Procedures

Federal and state civil rights laws prohibit labor unions from discriminating against individuals based on race, sex, or membership in any other protected class. An individual may bring a discrimination claim both to the Division and to the Equal Employment Opportunity Commission ("EEOC"), as the two agencies share jurisdiction over employment discrimination claims. *See, e.g.*, 42 U.S.C. § 2000e-8(b); Def.'s Ex. A.[1] Pursuant to federal employment

---

[1] Defendant's Exhibits A–I were filed in opposition to Plaintiff's motion for a preliminary injunction (*see* Docs. 21-1 to 21-9).

discrimination statutes, the Division and the EEOC have entered into a Worksharing Agreement to more efficiently process discrimination claims.  *See* Def.'s Ex. A.  By the terms of this agreement, the Division and the EEOC receive, draft, and investigate discrimination charges on each other's behalf.  *Id.* §§ II.A., II.C.  When the Division receives a complaint that raises claims under both federal and state law, the claim is considered dual-filed and receives both a federal and state charge number.  *Id.* § II.B.; Sobkowski Aff. ¶ 8.[2]  The agreement allocates initial claim-handling responsibilities between the two agencies.  Def.'s Ex. A, at § III.A.

A claim of unlawful discrimination may be filed against a labor organization, *see* N.Y. Exec. Law § 296(1)(c), (1)(e), (1-a), (3)(a), (7), (19)(a), with one of the Division's regional offices, *id.* § 297(1); Sobkowski Aff. ¶ 10.  An individual may file the complaint in person or by mail, and may be assisted by Division personnel if not represented by counsel.  9 N.Y.C.R.R. § 465.3(a)(1), (f).  Many individuals file complaints without assistance from anyone, Sobkowski Aff. ¶ 11, and the vast majority of complaints are filed *pro se*, *id.* ¶ 13; Joint 56.1 Statement of Facts ["56.1 Statement"] ¶ 18.  Once the Division receives a complaint, an intake specialist is responsible for soliciting relevant information and documentation from the complainant and entering the information into the Division's database.  Sobkowski Aff. ¶ 14.  The intake specialist is qualified to inform complainants about the investigative process but not to give legal advice.  *Id.* at ¶ 15.

The Division subsequently assigns an investigator to compile an administrative record. *Id.* ¶ 16.  The investigator must gather enough information to determine whether or not there is probable cause to believe that a respondent has unlawfully discriminated against the complainant.  Def.'s Ex. K, at X-3.  The investigator drafts the majority of a Final Investigation

[2] The Affirmation of Erin Sobkowski was filed in opposition to Plaintiff's motion for a preliminary injunction (*see* Doc. 20).

Report and Basis for Determination, outlining the issues, the parties' positions, the evidence, and the reasons supporting a potential determination of probable cause. *See, e.g.*, Pl.'s Exs. 6, 20, 36.[3] Investigators cannot, however, make factual or legal conclusions. Sobkowski Aff. ¶¶ 16–17. The regional director reviews the administrative record and the Final Investigation Report and the Basis for Determination, to decide whether the Division has jurisdiction over the case and whether there is probable cause to believe unlawful discrimination occurred. 9 N.Y.C.R.R. § 465.8(a); Sobkowski Aff. ¶ 18.

By statute, the Division has 180 days from the date the complaint is filed to determine whether it has jurisdiction and whether there is probable cause to believe the respondent engaged in unlawful discriminatory conduct. N.Y. Exec. Law § 297(2). However, the 180-day period is not mandatory, and failure to meet the time limit does not deprive the Division of jurisdiction over the case. *See Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.*, 35 N.Y.2d 371, 380–81 (1974). If a complaint is dismissed, the regional director issues a final determination that informs the complainant of the right to appeal to the New York State Supreme Court. 9 N.Y.C.R.R. § 465.5(d)(3). If a dual-filed complaint is dismissed, the regional director also informes the complainant of the right to seek review by the EEOC. *See, e.g.*, Pl.'s Ex. 2, at 3. If probable cause is found, the regional director recommends the case for a hearing. *See, e.g.*, Pl.'s Exs. 6, 20. A probable cause determination is not a final order of the Division. Sobkowski Aff. ¶ 34; *cf.* N.Y. Exec. Law § 298.

Some cases present unique or complicated legal issues about which the regional director may need a legal opinion. Downey Aff. ¶ 36. In such an instance, the regional director may, at any time before issuing a probable cause determination, request a legal opinion from the

---

[3] Plaintiff's Exhibits 1-46 were filed in support of Plaintiff's motion for a preliminary injunction (*see* Docs. 11-1 to 11-40, 22-1 to 22-6).

Division's Office of General Counsel.  *Id.*  An attorney would then review the case and issue the requested opinion.  *Id.*

**B.**     **Local 32BJ Before the Division**

Plaintiff identifies twenty-three cases filed by *pro se* complainants with the Division between 2009 and 2016 in which Local 32BJ has been a respondent.  Pl.'s Exs. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 30, 34, 45, 55, 58, 61, 64, 67.  Twenty-two of those cases followed the process as described above, all but one being dual-filed.  Pl.'s Exs. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 30, 45, 55, 58, 61, 64, 67.  In each of those cases, Local 32BJ made a written submission asserting that the duty of fair representation arising from the National Labor Relations Act ("NLRA") preempted the Division's investigation and prosecution of the administrative complaint and deprived it of jurisdiction.  Pl.'s Exs. 31–33, 47–48, 56, 59, 62, 65.  However, the Division investigated the merits of the allegations in each case.  Pl.'s Exs. 2, 4, 6, 8, 12, 14, 16, 18, 20, 22, 24, 26, 51–52, 57, 60, 63, 66; Def.'s Exs. H, I, U.  In two of those cases, the Division explicitly denied the challenge to its jurisdiction and found probable cause.  Pl.'s Exs. 6, 20.  In the twenty-third case, the union was added as a respondent at the conclusion of the investigatory stage, the day before the Division issued a probable cause determination.  Pl.'s Exs. 34–36.  As with the other cases, Local 32BJ made a written submission asserting that the duty of fair representation preempted the Division's jurisdiction, but the Division implicitly denied the challenge to its jurisdiction by proceeding with the case.  *Cf.* Def.'s Exs. F, R.  This case was later withdrawn, along with the cases for which the Division found probable cause.  Def.'s Exs. P, R, S, W.  Two of the twenty-three cases are still in the investigation stage, Pl.'s Exs. 64, 67, the rest having been withdrawn, dismissed, or otherwise discontinued, Pl.'s Exs. 2, 4, 8, 10, 12, 14, 16, 18, 22, 24, 26, 51–52, 57, 60, 63, 66; Def.'s Exs. H, I, P, R, S, U; Downey Aff. ¶ 51.

**ARGUMENT**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the instant action, no factual dispute exists (*see* Doc. 34 (Joint 56.1 Statement of Undisputed Facts)). Thus, only legal issues require determination.

State law is preempted only when congressional enactments demonstrate that preemption is the "clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). Here, Plaintiff cannot show that the judge-created[4] duty of fair representation demonstrates the unequivocal intent of Congress to preempt the Human Rights Law. Thus, the Court should grant Defendant's cross-motion for summary judgment and deny Plaintiff's motion for summary judgment. Fed. R. Civ. P. 56(a).

**I. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE FEDERAL DUTY OF FAIR REPRESENTATION DOES NOT PREEMPT THE DIVISION'S ENFORCEMENT OF EMPLOYMENT DISCRIMINATION STATUTES**

Courts "assum[e] that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565 (2009) (quoting *Medtronic, Inc.*, 518 U.S. at 485); *accord Altria Group v. Good*, 555 U.S. 70, 77 (2008) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1943)). Congressional intent to preempt state law will be found only where (1) a statute contains an express preemption provision, (2) "the scope of a statute indicates that Congress intended federal law to occupy a field exclusively," (3) "it is impossible for a private party to comply with both

---

[4] *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (explaining the judicial development of the duty of fair representation).

state and federal requirements," or (4) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

Plaintiff relies on the second form of preemption, known as "field preemption." Congress, however, did not "intend[] the Federal Government to occupy exclusively" the field regulating a labor organization's conduct as a collective bargaining representative. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990). Instead, Congress expressly prohibited unions from discriminating against individuals for any reason, 42 U.S.C. § 2000e-2(c)(1), and authorized state agencies to take the lead in enforcing employment discrimination laws, *id.* § 2000e-5(b), (c). Congress also expressly exempted state employment discrimination laws from preemption. 29 U.S.C. § 633(a); 42 U.S.C. §§ 2000e-7, 12201(b). Furthermore, "the fact that the duty of fair representation is a *judicial* creation tends to undermine the argument that *Congress* intended [the duty] to supplant state law with a federal cause of action." *Wrobbel v. Asplundh Constr. Corp.*, 549 F. Supp. 2d 868, 875 (E.D. Mich. 2008). "It should be self-evident that if Congress did not preempt state civil rights actions by operation of federal civil rights law it could not have meant to do so through federal labor law." *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., Local 704*, 25 F.3d 1308, 1312 (6th Cir. 1994). Moreover, Supreme Court precedent does not support Plaintiff's preemption argument.

**A.** **Congress Intended Discrimination Claims to Exist Independently of Duty of Fair Representation Claims and for State Agencies to Take the Lead in Enforcement of Discrimination Claims**

"'[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic*, 518 U.S. at 485 (quoting *Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963)). When Congress enacted the Civil Rights Act of 1964,

Pub. L. No. 88-352, 78 Stat. 241, and the Age Discrimination in Employment Act of 1967

("ADEA"), Pub. L. No. 90-202, 81 Stat. 602, the duty of fair representation already existed, *see*

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953). Nevertheless, "Congress thought it necessary

to afford the protections of Title VII against unions." *Alexander v. Gardner-Denver Co.*, 415

U.S. 36, 58 n.19 (1974) (citing 42 U.S.C. § 2000e-2(c)). At the time, no court had found that the

duty of fair representation preempted state substantive law. *Cf.* Pl.'s Mem. of Law 9–11. Thus,

there was no "relevant judicial precedent" around which Congress could have manifested any

intent to preempt state law. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). Moreover,

even had there been such precedent, Title VII "manifests a congressional intent to allow an

individual to pursue independently his rights under both Title VII and other applicable state and

federal statutes," *Alexander*, 415 U.S. at 48, and "requires recourse to available state

administrative remedies," *Shaw v. Delta Air Lines*, 463 U.S. 85, 101 (1983).

   In affording employees the protection of employment discrimination statues against

unions, Congress expressly intended that state agencies take the lead in investigation and

enforcement in order "to give state agencies an opportunity to redress the evil at which the

federal legislation was aimed, and to avoid federal intervention unless its need was

demonstrated." *Mohasco Corp. v. Silver*, 447 U.S. 807, 821 (1980). Accordingly, Congress

"guarantee[d] all States with fair employment practices laws an initial opportunity to resolve

charges of discrimination." *Kremer v. Chem. Constr. Co.*, 456 U.S. 461, 473 (1982); *see* 42

U.S.C. § 2000e-5(c) (requiring complainants to file charges with state or local agencies before

filing with the EEOC); *id.* § 12117(a) (incorporating Title VII enforcement mechanism of 42

U.S.C. §§ 2000e-4, -5, -6, -8, and -9). Significantly, in granting states this opportunity, "New

York's fair employment laws were referred to in the congressional debates . . . as an example of

existing state legislation effectively combatting employment discrimination." *Kremer*, 456 U.S. at 473. Moreover, Congress required the EEOC to "accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law." 42 U.S.C. § 2000e-5(b).

Congress additionally intended that the EEOC cooperate with state and local agencies, allowing the EEOC to "utilize the services of such agencies and their employees, and . . . pay . . . such agencies and their employees for services rendered to assist the Commission in carrying out [Title VII]" of the Civil Rights Act of 1964. 42 U.S.C. § 2000e-8(b); *id.* § 12117(a) (incorporating Title VII enforcement provisions into the Americans with Disabilities Act ("ADA")); *see also* 29 U.S.C. § 625(b) (empowering the EEOC to "cooperate with regional, State, local, and other authorities . . . to aid in the enforcement of" the ADEA). "In furtherance of such cooperative efforts, the [EEOC] may enter into written agreements with such State or local agencies . . . ." 42 U.S.C.§ 2000e-8(b). Pursuant to these statutes, the Division and the EEOC have entered into a Worksharing Agreement that empowers the Division to act as the EEOC's agent for receiving, drafting, processing, and resolving charges. *See* Def.'s Ex. A, at §§ II.A., II.C., III.A.

Under the Worksharing Agreement, each agency "will process all Title VII, ADA, . . . and ADEA charges that [it] originally receive[s]." *Id.* § III.A. Where charges are initially filed with the EEOC, the Division waives its right under 42 U.S.C. § 2000e-5 of exclusive jurisdiction for a 60-day period, *id.* § III.A.1., in order "to provide individuals with an efficient procedure for obtaining redress of their grievances," *id.* § I.B.; *cf. Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 311–12 (2d Cir. 1996). The Worksharing Agreement also sets out the process by which the Division provides pertinent information to the EEOC so that it may accord substantial weight to

the Division's findings.  *Id.* § V.B.

The Supreme Court has acknowledged the essential role that state agencies play in enforcing federal civil rights laws.  *Shaw v. Delta Air Lines*, 463 U.S. 85, 101 (1983).  In *Shaw*, the Court held that ERISA did not completely preempt the Human Rights Law, relying on clear congressional intent to have state administrative agencies be the primary enforcers of workplace discrimination laws.  *Id.* at 101–02 (quoting 42 U.S.C. § 2000e-5(c)).  In so holding, the Court noted that the EEOC is required to accord substantial weight to the state agencies' determinations.  *Id.* at 102 (citing 42 U.S.C. § 2000e-5(b)).  The Court also noted that preemption "not only would eliminate a forum for resolving disputes that . . . may be more convenient for the EEOC, but also would substantially increase the EEOC's workload," especially since the developed administrative record that otherwise would come to the EEOC from the state agency would necessarily have to be developed by the EEOC, causing less thorough investigations or delays to each individual case.  *Id.* at 102 n.23.  Thus, preemption would "disrupt[] . . . the enforcement scheme contemplated by Title VII."  *Id.* at 102.

Similarly, preemption of the Human Rights Law by the duty of fair representation would significantly disrupt the enforcement scheme Congress intended for the federal employment discrimination statutes and preclude their proper enforcement.  *Cf. Kremer*, 456 U.S. at 473; *Mohasco Corp.*, 447 U.S. at 821.  Under the Worksharing Agreement, the Division investigates more than 4,000 dual-filed cases annually on behalf of the EEOC.  Downey Aff. ¶ 10.  Thus, the Division's twelve offices, *see Contact Us*, New York State Division of Human Rights, http://www.dhr.ny.gov/contact-us (last visited June 3, 2015), greatly supplement the investigative capacity of the EEOC's two offices in New York, *see Jurisdictional Area*, U.S. Equal Emp't Opportunity Comm'n, http://www.eeoc.gov/field/newyork/area.cfm (last visited

June 3, 2015); *EEOC Charge Receipts by State (includes U.S. Territories) and Basis for 2014*, U.S. Equal Emp't Opportunity Comm'n, http://www1.eeoc.gov/eeoc/statistics/enforcement/ state_14.cfm (last visited June 3, 2015). As all but one of the cases that Plaintiff identifies was dual-filed, Pl.'s Exs. 1, 3, 5, 8–9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 34, 45, 55, 58, 61, 64, 67, preemption would cause significant inefficiencies and severely hamper an individual's ability to bring discrimination claims against his or her union. *See Shaw*, 463 U.S. at 102 & n.23.

Moreover, if a union discriminates against a member of the bargaining unit because of his or her membership in a protected class such as race, sex, or age, the individual is not limited to asserting a claim for a breach of the duty of fair representation. Instead, he or she may allege violations of employment discrimination laws. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668–69 (1987) (Title VII claim cognizable where union may have breached duty of fair representation); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 284–85 (1976) (Title VII claim cognizable even if union also allegedly breached duty of fair representation); *Farmer v. ARA Servs., Inc.*, 660 F.2d 1096, 1104 (6th Cir. 1981) (holding that conduct resulting in breach of duty of fair representation "also makes out a Title VII violation"). "It is well established that a union's breach of its duty of fair representation may subject it to liability under Title VII." *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000). Likewise, the union may be liable under the ADA or the ADEA. *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 448 (S.D.N.Y. 2000); *accord 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 271–72 (2009) (citing *Goodman v. Lukens Steel*, 482 U.S. at 669) (union's conduct can subject it to liability under both duty of fair representation and ADEA). Thus, it follows that a union may be subject to liability under the Human Rights Law, which is substantially equivalent to the federal statutes. *See Parker*, 97 F. Supp. 2d at 448.

Finally, Congress intended that state discrimination laws *not* be preempted by federal law where state laws do not "require or permit" conduct prohibited by Title VII, 42 U.S.C. § 2000e-7, and where state laws provide "greater or equal protection" to ADA protection, 42 U.S.C. § 12201(b). For age discrimination claims, Congress additionally intended *not* to preclude state agencies from investigating and holding hearings unless the individual filed a subsequent action in the federal courts. 29 U.S.C. § 633(a) (ADEA). The Human Rights Law prohibits the exact conduct that the federal statutes prohibit. Specifically, under state law a union may not "exclude or . . . expel from its membership [an] individual or . . . discriminate in any way against any of its members" because of membership in a protected class. N.Y. Exec. Law § 296(1)(c). Likewise, under federal law a union may not (i) "exclude or . . . expel from its membership, or otherwise . . . discriminate against, any individual because of his race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(c)(1), (ii) "exclude or . . . expel from its membership, or otherwise . . . discriminate against, any individual because of his age," 29 U.S.C. § 623(c), or (iii) "discriminate against a qualified individual on the basis of disability," 42 U.S.C. § 12112(a). As there was no preexisting judicial determination that state laws are preempted by the duty of fair representation, *see Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), there is no clear and manifest congressional intent to preempt the Human Rights Law, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Accordingly, preemption does not apply because Congress (i) intended to hold unions liable for violations of employment discrimination statutes despite the preexistence of the duty of fair representation, (ii) intended to have states take the lead in joint enforcement of these statutes, and (iii) intended not to preempt state laws that are consistent with the federal employment discrimination statutes. Moreover, as set forth below, the alleged completely preemptive force of

the duty of fair representation is not supported by Supreme Court precedent, which neither discusses nor demonstrates congressional intent to preempt state laws. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

### B. The Supreme Court Has Never Held that the Duty of Fair Representation Preempts State Substantive Law

In *Vaca v. Sipes*, the Supreme Court never mentioned state law or discussed the preemption thereof. 386 U.S. 171 (1967), *rev'g Sipes v. Vaca*, 397 S.W.2d 658 (Mo. 1965).[5] Instead, *Vaca* discussed a separate preemption doctrine known as *Garmon* preemption, *id.*, which is unique to labor law, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988). Under *Garmon* preemption, where conduct at issue is arguably protected by 29 U.S.C. § 157 or arguably prohibited by 29 U.S.C. § 158 as an unfair labor practice, the National Labor Relations Board ("NLRB") has exclusive jurisdiction to consider the matter and both federal and state courts lack subject matter jurisdiction. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Since 1962, the NLRB has considered a breach of the duty of fair representation to be an unfair labor practice under 29 U.S.C. § 158(b). *See Miranda Fuel Co.*, 140 N.L.R.B. 181 (1962), *enforcement denied sub nom. NLRB v. Miranda Fuel Co.*, 326 F.2d 172 (2d Cir. 1963). Thus, *Garmon* preemption was at issue in *Vaca v. Sipes*. 386 U.S. at 176–88.

In *Vaca*, a union member filed suit in Missouri state court alleging that after he was fired due to his purportedly poor health, *id.* at 175, his union "'arbitrarily, capriciously and without just or reasonable reason or cause' refused to take his grievance . . . to arbitration," *id.* at 173. A jury awarded compensatory and punitive damages against the union. *Id.* However, the trial judge set aside the verdict on *Garmon* preemption grounds. *Id.* at 173–74; *see also Sipes v.*

---

[5] The Missouri Supreme Court also did not mention or discuss the existence of a state law claim. 397 S.W.2d 658.

*Vaca*, 397 S.W.2d at 662. The intermediate state appellate court affirmed. *Vaca v. Sipes*, 386 U.S. at 173–74.

The Missouri Supreme Court reinstated the verdict, holding (i) that the jurisdiction of the Missouri courts was not preempted because the union's conduct was not an unfair labor practice, 397 S.W.2d at 664–65 (citing 29 U.S.C. §§ 157–158), and (ii) that there was sufficient evidence supporting the jury's determination that the plaintiff had a meritorious claim but the union had refused to take the grievance to arbitration, *id.* at 665. In holding that preemption did not apply, the court relied on Supreme Court case law finding that arbitrary, as opposed to discriminatory, expulsion from union membership is not an unfair labor practice under federal law. *Id.* at 662 (quoting *Int'l Ass'n of Machinists v. Gonzales*, 356 U.S. 617, 620 (1958)); *cf. id.* at 664 (citing 29 U.S.C. § 158(b)(2) ("It shall be an unfair labor practice for a labor organization or its agents . . . to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.")). In upholding the verdict finding arbitrary union conduct, the court discussed evidence of the plaintiff's health that was presented to the jury instead of the information available to the union at the time it decided not to arbitrate the grievance. *Id.* at 661, 665; *see* 386 U.S. at 193.

The Supreme Court "granted certiorari to consider whether exclusive jurisdiction lies with the NLRB," that is, whether *Garmon* preemption applied, 386 U.S. at 174, "and, if not, whether the finding of [u]nion liability and the relief afforded [the plaintiff] are consistent with governing principles of federal labor law," 386 U.S. at 174. The Supreme Court began its

discussion of *Garmon* preemption by briefly outlining the development of the duty of fair representation. *Id.* at 177. In so doing, the Court described the duty as "includ[ing] a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* The Court also noted that the "complaint alleged a breach by the [u]nion of a duty grounded in federal statutes, and . . . federal law therefore governs his cause of action." *Id.* at 177. The Court then held that *Garmon* preemption was inapplicable because the duty of fair representation was judicially developed long before the NLRB held that the duty's breach was an unfair labor practice, and because ousting the courts of jurisdiction would remove the traditional supervisory jurisdiction of the courts that ensured impartial review of individuals' complaints. *Id.* at 180–83.

In reviewing the finding of union liability, the Supreme Court described the appropriate standard thus: "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190. The Supreme Court then determined that the plaintiff did not prove arbitrary or bad faith conduct and that the Missouri Supreme Court had applied the wrong standard, *id.* at 193, because the Missouri court had focused on "whether the evidence supported [the plaintiff's] assertion that he had been wrongfully discharged regardless of the [u]nion's good faith" in determining that there was not enough medical evidence to take the grievance to arbitration, *id.* at 189.

No state-law claim had been alleged, and the Supreme Court did not mention or discuss preemption of any state-law claims by the duty of fair representation. *Id.* at 173–98. Thus, *Vaca* does not support the contention that Congress intended for the duty of fair representation to preempt state substantive law. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

C.  **Circuit Court Decisions Holding that State Substantive Law Is Preempted by the Duty of Fair Representation Are Not Supported by Supreme Court Precedent**

Despite there being no mention of state law in *Vaca*, 386 U.S. at 173–98, Plaintiff relies on Circuit Court cases holding that under *Vaca* the duty of fair representation preempts state substantive law.  For instance, the Fifth Circuit has stated: "In *Vaca v. Sipes*, . . . the [Supreme] Court . . . held that th[e] federal duty of fair representation preempted state substantive law." *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1166 (5th Cir. 1989) (citing *Vaca*, 386 U.S. at 188–93).  In support of its statement, the Fifth Circuit quoted the dicta in *Vaca* explaining that the duty of fair representation is grounded in federal statutes and governed by federal law. *Richardson*, 864 F.2d at 1166 (quoting *Vaca*, 386 U.S. at 177).  It also cited the section of *Vaca* that merely explained the proper standard for determining arbitrariness in the duty of fair representation context and rejected the idea that union members were entitled to have their grievances taken to arbitration.  *Id.* (citing *Vaca*, 386 U.S. at 189–93).  Indeed, the Fifth Circuit acknowledged that *Vaca* did not address preemption of state law, yet it nonetheless read such a holding into *Vaca*.  *Id.* at 1166 n.3 (citing *Vaca*, 386 U.S. at 180–93; *Garmon*, 359 U.S. 236).

The First Circuit likewise relied on dicta in *Vaca* when holding that the duty of fair representation preempts state substantive law.  *See Condon v. Local 2944, United Steelworkers of Am., AFL-CIO, CLC*, 683 F.2d 590 (1st Cir. 1982).  In *Condon*, the court held that "[a] union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" is an area in which "Congress has 'occupied th[e] field and closed it to state regulation.'"  *Id.* at 594–95 (quoting *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton* [hereinafter "*Teamsters*"], 377 U.S. 252, 258 (1964)) (citing *Vaca*, 386 U.S. at 177).  As explained above, however, *Vaca* does not support the First Circuit's holding.  386 U.S. at 177.

Moreover, *Teamsters* had nothing to do with the duty of fair representation. 377 U.S. 262.

Instead, *Teamsters* involved a distinct preemption doctrine known as *Machinists* preemption.[6]

*See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 145–47 (1976) (citing *Teamsters*, 377 U.S. at 258–60).

In *Teamsters*, a union attempted to discourage an employer's customers from doing business with the employer while union members were on strike. 377 U.S. at 253. At the time of the strike, Section 303(a) of the Labor Management Relations Act of 1947 ("LMRA"), Pub. L. No. 80-101, 61 Stat. 136, 158–59 (1947) (amended 1959), prohibited unions from encouraging the customers' employees to force their employers to cease doing business with the employer against which there was a strike. *Teamsters*, 377 U.S. at 253 n.1. The statute did not preclude unions from persuading a customer's management to refrain from doing business with the employer, *id.* at 259, but Ohio state law did forbid such conduct, *id.* at 255. In holding Ohio law preempted, the Supreme Court noted that Congress "select[ed] which forms of economic pressure should be prohibited," *id.* at 258–59, thus striking a balance "between the union, the employees, the employer and the community," *id.* at 259 (citing *Local 761, Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. NLRB*, 366 U.S. 667, 672 (1961)). Accordingly, Ohio state law preventing the union's contact with the customer's management constituted "an obstruction of federal policy" that allowed such conduct, *id.* at 260, and thus "Congress occupied this field and closed it to state regulation," *id.* at 258.

The Supreme Court did not mention the duty of fair representation in *Teamsters*. *Id.* at 253–62. Thus, *Teamsters* does not support the First Circuit's holding that the duty of fair

---

[6] *Machinists* preemption, as distinct from *Garmon* preemption, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 n.8 (1988) (citing *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp't Relations Comm'n*, 427 U.S. 132 (1976)), preempts "state law and state causes of action concerning conduct that Congress intended to be unregulated," *id.* (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749 (1985)).

representation was one of the "certain areas [where] state law may constitute an impermissible obstacle to the accomplishment of the purposes of Congress by regulating conduct that federal law has chosen to leave unregulated." *Condon*, 683 F.2d at 594. In sum, the First Circuit took language from an inapposite case, *Teamsters*, and applied it to a case that did not mention state law or preemption thereof, *Vaca*, to support its holding that state substantive law was preempted by the duty of fair representation. *Condon*, 683 F.2d at 594–95.

The Sixth and Ninth Circuit cases cited also do not support the contention that Congress intended the duty of fair representation to preempt state law. The Ninth Circuit relied explicitly on *Condon* when it held that the duty of fair representation "displaces state law that would impose duties on unions by virtue of their status as the workers' exclusive collective bargaining representative." *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008). The Ninth Circuit also relied on portions of *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362 (1990), wherein the Supreme Court acknowledged—while discussing whether a claim under LMRA § 301, 29 U.S.C. § 185,[7] was cognizable—that mere negligence did not create liability under the duty of fair representation, *Rawson*, 495 U.S. at 373–74. In *Rawson*, however, the Supreme Court *did not* hold that the duty of fair representation preempted state-law claims, but instead held that § 301 preempted a state-law negligence claim because the duty allegedly assumed by a union to inspect a mine arose from the terms of a collective bargaining agreement and determining the extent of the duty to inspect required interpretation of the agreement. *Id.* at 368–72.

---

[7] Another form of preemption under federal labor law is known as § 301 preemption. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403–10 (1988). LMRA § 301 grants jurisdiction to the federal courts over actions claiming violations of collective bargaining agreements. 29 U.S.C. § 185(a). Thus, "state-law rights and obligations that do not exist independently of private [collective bargaining] agreements, and that as a result can be waived or altered by agreement of the private parties, are preempted by those agreements." *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). However, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Lingle*, 486 U.S. at 410.

Finally, the Sixth Circuit failed to cite any statute, regulation, or case standing for the proposition that "[t]he duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation." *Maynard v. Revere Copper Prods., Inc.*, 773 F.2d 733, 735 (6th Cir. 1985), *quoted in Welch v. Gen. Motors Corp., Buick Motor Div.*, 922 F.2d 287, 294 (6th Cir. 1990). The Sixth Circuit likewise failed to cite any precedent for the proposition that the Michigan Handicappers' Civil Rights Act[8] "created no new rights for an employee and imposed no duty on a union not already clearly present under existing federal labor law." *Maynard*, 773 F.2d at 735. Instead, the court cited *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 299 (1971), when asserting that determining whether a union breached the duty of fair representation is a question of federal law, *Maynard*, 773 F.2d at 735. In *Lockridge*, however, preemption was determined under *Garmon*, not on duty of fair representation grounds. 403 U.S. at 282–97. Moreover, the Sixth Circuit classified duty of fair representation claims as arising under LMRA § 301. *Welch*, 922 F.2d at 288, 294; *Maynard*, 773 F.2d at 734. However, the Supreme Court clarified that preemption under § 301 occurs only when interpretation of a collective bargaining agreement is required. *Rawson*, 495 U.S. at 368–72; *Lingle*, 486 U.S. at 410. Thus, the Sixth Circuit subsequently held that state discrimination claims are not preempted, as they "arise[] from an independent body of state substantive rights and do[] not invoke any legal ground that has been preempted by federal labor law." *Tisdale v. United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can., Local 704*, 25 F.3d 1308, 1311 (6th Cir. 1994).

 Accordingly, the Circuit Court cases upon which Plaintiff relies do not demonstrate that

---

[8] *See* M.C.L.A. § 37.1204(d): "A labor organization shall not: . . . (d) Fail to fairly and adequately represent a member in a grievance process because of a member's handicap."

Congress intended for the duty of fair representation to preempt state substantive law.

**D.** **District Courts Finding Preemption of State Law by the Duty of Fair Representation Rely on Cases that Are Not Supported by Supreme Court Precedent**

The District Court cases that Plaintiff cites likewise do not demonstrate that Congress intended for the duty of fair representation to preempt state substantive law. For instance, in *Oliva v. Wine, Liquor & Distillery Workers Union, Local One*, the district court held state-law claims preempted by the duty of fair representation. 651 F. Supp. 369, 371 (S.D.N.Y. 1987). However, the *Oliva* court based its holding on another district court case, *Aledide v. Barr*, that found removal from state court of "a one sentence complaint" proper because it stated a duty of fair representation claim, but "d[id] not mean to imply that [the complaint] cannot also state a pendent state law claim." 607 F. Supp. 281, 284 (S.D.N.Y. 1985). The *Oliva* court also relied on a Ninth Circuit case affirming the dismissal of state-law age and race discrimination claims against a union for failure to exhaust administrative remedies, not because of preemption. *Carter v. Smith Food King*, 765 F.2d 916, 921–22 (9th Cir. 1985). Although the Ninth Circuit in *Carter* found that state tort claims were preempted because they were based on the same conduct forming the basis of a hybrid § 301/duty of fair representation claim against the plaintiff's employer and union, *id.* at 921, the Circuit relied on a Supreme Court case finding *Garmon* preemption inapplicable to a state-law claim for outrageous conduct, *id.* (citing *Farmer v. United Bhd. of Carpenters & Joiners, Local 27*, 430 U.S. 290, 305 (1977)), and on two circuit court cases dealing with preemption or removal based solely on LMRA § 301, *id.* (citing *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474–75 (9th Cir. 1984); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)).

From the cases cited in *Carter* to the conclusion in *Oliva*, there are too many inferential

steps to demonstrate any congressional intent to preempt state law.  Moreover, the other district

court cases that Plaintiff cites relied upon *Oliva*, previously discussed Circuit Court cases, *see*

*supra* Part I.C., or each other to support findings of preemption.  Because those opinions are

unsupported by Supreme Court precedent, not one demonstrates that Congress intended to

occupy the field exclusively for federal jurisdiction and foreclose state enforcement of

discriminatory conduct by unions.  *See Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Accordingly, the Court should grant summary judgment in favor of Defendant.

## II. PLAINTIFF DOES NOT SATISFY THE REQUIREMENTS FOR GRANTING A PERMANENT INJUNCTION

The standards for a preliminary injunction and a permanent injunction are "essentially the

same," except that a permanent injunction requires actual, instead of the likelihood of, success on

the merits.  *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).  Where an

injunction "will affect government action taken in the public interest pursuant to a statutory or

regulatory scheme," *Cent. Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health & Mental*

*Hygiene*, 763 F.3d 183, 192 (2d Cir. 2014) (quoting *Red Earth LLC v. United States*, 657 F.3d

128, 143 (2d Cir. 2011)), "[a] plaintiff seeking a [permanent] injunction must establish . . .

succe[ss] on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public

interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Salinger v.*

*Colting*, 607 F.3d 68, 77–80 (2d Cir. 2010).  "An injunction is a matter of equitable discretion; it

does not follow from success on the merits as a matter of course." *Winter*, 555 U.S. at 32

(citation omitted).  As discussed above, Plaintiff's argument that the duty of fair representation

preempts the Human Rights Law is not supported by Supreme Court case law.  Thus, Plaintiff

cannot succeed on the merits.  Furthermore, Plaintiff fails to establish irreparable harm or that

the equities and the public interest favor granting an injunction.

### A.    Plaintiff Does Not Show that Local 32BJ Suffered Irreparable Harm

Local 32BJ has not suffered irreparable harm.  Because the Division has jurisdiction to enforce the Human Rights Law against Local 32BJ, the time and effort expended by Local 32BJ to defend itself before the Division caused no harm.  The substance and depth of investigations and other preparations that Plaintiff describes as constituting irreparable harm demonstrate little more than Local 32BJ's employees fulfilling the functions of their positions.  *Cf.* Pl.'s Mem. of Law 12–16.  Regardless, none of the administrative cases that Plaintiff identifies proceeded to an administrative hearing.  Pl.'s Exs. 2, 4, 8, 10, 12, 14, 16, 18, 22, 24, 26, 51–52, 57, 60, 63, 66; Def.'s Exs. H, I, P, R, S, U.  Thus, Local 32BJ has merely submitted documentation to the Division.

To the extent the Division may have failed to meet the directory 180-day timeframe for completing investigations, Plaintiff fails to show that any delays caused additional expenditures of Local 32BJ's resources.  *See* Pl.'s Mem. of Law 12–13.  A delay in requesting further information, Baker Decl. ¶¶ 4–7, does not demonstrate that the Division's investigator would not have asked for such information had he or she contacted Local 32BJ within the defined period.  Furthermore, if the Division's conduct in processing any case was arbitrary or violated lawful procedure,[9] Local 32BJ's remedy is to seek judicial review "of the proceeding and of the questions determined therein" by filing a petition in state court, in the event it is "aggrieved" by "an order after hearing, a cease and desist order, an order awarding damages," or an order that "makes a final disposition of [the] complaint."  N.Y. Exec. Law § 298.

---

[9] Concerning the case in which there was an amendment adding Local 32BJ as a respondent, state regulations grant "[t]he [D]ivision or the complainant . . . the power reasonably and fairly to amend the complaint."  9 N.Y. C.R.R. § 465.4(a).  The rule allows amendments after investigations are concluded—even while hearings are ongoing.  *Id.* Moreover, "amendments made after a probable cause determination are not subject to any further investigations or determinations of probable cause."  *Id.* § 465.4(d).

In sum, Local 32BJ has suffered no harm, nor will it suffer harm, by responding to administrative complaints filed before the Division. Thus, an injunction should be denied.

**B.**     <u>The Balance of Equities Does Not Tip in Plaintiff's Favor and the Public Interest Weighs Against Granting a Permanent Injunction</u>

"[T]he balance of equities and consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *see also Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) (finding no reason to ignore the balance of equities when injunction sought "in *any* type of case"). Both weigh against granting an injunction.

If a preliminary injunction is granted, the Division will be prevented from making determinations that under both federal and state laws it has the statutory authority to make. *See supra* Part I.A. Such an order would revoke the Division's "opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated." *Mohasco Corp. v. Silver*, 447 U.S. 807, 821 (1980). It would also lead to delays in processing and resolving discrimination claims. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 100–03 (1983). The Division's harm, balanced against the fact that there is no constitutional harm to Local 32BJ, weighs against granting an injunction.

The public interest likewise weighs against granting an injunction. *Winter*, 555 U.S. at 20. The Division exists to provide an administrative forum for employees and residents of the State of New York to bring complaints of unlawful discrimination—including the over 81,000 individuals represented by Local 32BJ who work in New York. First Am. Compl. ¶ 21. The statutory joint federal-state enforcement scheme, 42 U.S.C. § 2000e-8(b), as effected by the Worksharing Agreement, is meant to "provide individuals with an efficient procedure for obtaining redress for their grievances." Def.'s Ex. A, § I.B. An injunction would curtail the

rights of these individuals to have their federal and state discrimination claims investigated as Congress intended, undermining the joint enforcement scheme created by Congress, *see Kremer v. Chem. Constr. Co.*, 456 U.S. 461, 473 (1982).  It would also hamper the efficiency contemplated by statute, *see Shaw*, 463 U.S. at 100–03, and prevent individuals from achieving redress of their alleged wrongs in a forum expressly allowed by federal law, 42 U.S.C. § 2000e-5(b).  Thus, it is not in the public interest to grant an injunction.

Accordingly, an injunction should not be granted.

## III.    *YOUNGER* ABSTENTION APPLIES TO THE PENDING ADMINISTRATIVE ENFORCEMENT PROCEEDING

*Younger* abstention applies to this action to the extent that Plaintiff seeks to enjoin the case currently pending before the Division.  *See Younger v. Harris*, 401 U.S. 37 (1971).  Under the *Younger* abstention doctrine, courts should not enjoin state administrative proceedings "initiated to sanction the federal plaintiff . . . for some wrongful act."  *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 592 (2013) (citations omitted).  Such proceedings include those brought to enforce state or local anti-discrimination laws, *see, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986); *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16 (2d Cir. 2012) (applying *Younger* abstention to action seeking judgment declaring that National Banking Act preempts proceeding before the New York State Division of Human Rights against tax preparer), whether filed by an individual or the administrative agency, *see Fund v. City of New York*, No. 14 Civ. 2958 (KPF), 2014 U.S. Dist. LEXIS 68509, at *2, *6 (S.D.N.Y. May 19, 2014), even if the agency does not follow up initial investigations by filing a more formal complaint before the agency or a court, *id.* at *6–7; *see also id.* at *13–20.

Plaintiff cannot avoid *Younger* abstention by asserting that the preemption claim is facially conclusive.  *Cf. HSBC Bank USA v. N.Y.C. Comm'n on Human Rights*, 673 F. Supp. 2d

210, 215 (S.D.N.Y. 2009); *J. & W. Seligman & Co. v. Spitzer*, No. 05 Civ. 7781 (KMW), 2007

U.S. Dist. LEXIS 71881, at *12 & n.4 (S.D.N.Y. Sept. 27, 2007); *Terminix Int'l Co. v. Rocque*,

210 F. Supp. 2d 97, 102 (D. Conn. 2002). Precedent does not support a finding of preemption,

*see supra* Part I., while the need to determine the impact of the relationship between the duty of

fair representation and the joint-enforcement provisions of the federal civil rights statutes, *see*

*supra* Part I.A., demonstrates that significant "unresolved legal . . . issues . . . exist," *see HSBC*

*Bank USA*, 673 F. Supp. 2d at 216. Thus, *Younger* abstention is appropriately applied to the case

currently pending before the Division.

## IV. PLAINTIFF'S PROPOSED INJUNCTION IS UNNECESSARY BECAUSE THE DIVISION ALREADY HAS A MECHANISM BY WHICH IT CAN IDENTIFY CLAIMS IMPLICATING THE DUTY OF FAIR REPRESENTATION

If the Court finds that the duty of fair representation preempts the Human Rights Law, the

Court need not devise any procedure for the Division to follow. The Division will comply with

such a holding with respect to complaints filed against Local 32BJ, subject to the right to appeal.

The process outlined in the Affirmation of Caroline Downey would suffice to guarantee prompt

review of any administrative complaint by a Division attorney. *See* Downey Aff. ¶¶ 36–41, 43,

48.

When a complainant files charges against Local 32BJ with the Division, the investigator

would identify the case as possibly implicating the duty of fair representation.[10] *Id.* ¶ 37. The

investigator would bring the case to the attention of the regional director, who would forward the

complaint to the General Counsel's office for review. *Id.* ¶ 38. An attorney would then review

the complaint to determine whether some or all of the allegations implicate the duty of fair

---

[10] Local 32BJ should also identify the issue for the Division, just as the Division must raise its immunity from suit before the federal courts. *See, e.g.*, *Morris v. City of New York*, No. 05 Civ. 7368 (PKC), 2007 U.S. Dist. LEXIS 14765, at *3 (S.D.N.Y. Mar. 1, 2007) (Division moved to dismiss § 1983 claims on sovereign immunity grounds); *Boykin v. Key Corp*, No. 03-CV-944S, 2005 U.S. Dist. LEXIS 5546, at *1–2, *29–30 (W.D.N.Y. Mar. 28, 2005) (same).

representation.  *Id.* ¶¶ 36, 39.

Where the face of the complaint is inadequate to identify all the legal issues, the case would be referred back to the regional office for investigation, to gather information sufficient to determine the nature of the allegations.  *Id.* ¶ 40.  The attorney in the General Counsel's office would then determine whether the allegations implicate the duty of fair representation.  *Id.*

Where only Local 32BJ is named and all the allegations against it implicate the duty, the case would be transferred to the EEOC for processing pursuant to the Worksharing Agreement. Def.'s Ex. A, at § II.C.; Downey Aff. ¶ 39.  Where some allegations against Local 32BJ implicate the duty while others do not, the Division would investigate the case as to the non-preempted allegations.  Downey Aff. ¶ 48.  In any determination issued, the Division would state that it lacks jurisdiction over the preempted allegations.  *Id.*  The Division's finding would be subject to judicial review insofar as there are findings under state law.  *Id.*; *see* N.Y. Exec. Law § 298.  The Division would also provide the EEOC with the entire administrative record, pursuant to the Worksharing Agreement, for a determination of reasonable cause under federal law.  Downey Aff. ¶ 48; Def.'s Ex. A, at § V.  The EEOC would give substantial weight to the Division's findings but determine on its own how to deal with any preempted allegations, which are still cognizable under the federal employment discrimination statutes.  42 U.S.C. § 2000e-5(b); Downey Aff. ¶ 48.  Where Local 32BJ is not the only respondent, the Division would sever the case against Local 32BJ from the other respondents, if necessary, Downey Aff. ¶ 43, and proceed with the process as described above, *id.* ¶¶ 36–40, 43, 48.

This process is sufficient to ensure Local 32BJ that it will not be held liable under state law for any act committed in its capacity as a collective bargaining representative. Plaintiff's proposed protocol would unnecessarily alter established state procedures to achieve the same

outcome.  *Cf. id.* ¶ 41.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment should be granted

and Plaintiff's motion for summary judgment should be denied in its entirety.  An injunction

should not issue.


Dated: New York, New York          ERIC T. SCHNEIDERMAN
      April 6, 2016          Attorney General of the
           State of New York


      By:  /s/ Angel M. Guardiola II
      ANGEL M. GUARDIOLA II
      Assistant Attorney General
      120 Broadway, 24th floor
      New York, New York 10271
      Tel.: (212) 416-6696
      Fax:  (212) 416-6009
      angel.guardiola@ag.ny.gov

      *Attorneys for New York State Division of*
      *Human Rights*