```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
  HECTOR FIGUEROA, President, SEIU Local  :
  32BJ, CTW, CLC,  :
                                                       Plaintiff,  :    1:14-cv-8796-GHW

                       -v -                :    MEMORANDUM OPINION
                                                     :        AND ORDER
  HELEN DIANE FOSTER, Commissioner, New  :
  York State Division of Human Rights,  :
                                          Defendant.  :
------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

        The Service Employees International Union Local 32BJ ("Local 32BJ" or the "Local") represents over 81,000 New York employees. Pursuant to the collective bargaining agreements to which it is a party, the Local demands arbitration of approximately 1,000 disputes involving employee discipline each year. The New York State Human Rights Division ("SDHR") receives and investigates thousands of complaints of unlawful discriminatory practices annually, including over 4,000 complaints related to alleged discrimination in the workplace that are dual-filed with the Equal Employment Opportunity Commission ("EEOC").[1] A fraction of those complaints—less than four annually, or one-tenth of one percent—contain allegations that the Local discriminated against a rank-and-file member, typically in the context of the grievance and arbitration process.[2]

        Plaintiff Hector Figueroa, President of Local 32BJ, brings this suit against Defendant Helen Diane Foster, in her official capacity as the Commissioner of the SDHR, seeking declaratory and injunctive relief. Specifically, Figueroa asks this Court to issue declaratory judgment, finding that a labor organization's duty of fair representation under the National Labor Relations Act ("NLRA")

---

[1] Downey Affirm. ¶ 10.

[2] Plaintiff has identified 23 such complaints filed since mid-2009. Taking that number and dividing by six—a conservative calculation, because although nearly seven years have passed since July 1, 2009 the Court is not sure of the exact date Plaintiff references by "mid-2009"—yields an annual average of 3.8 complaints.

preempts claims made against it under the New York Human Rights Law ("HRL"), when the labor organization was acting in its capacity as a collective bargaining representative. He further seeks injunctive relief to prevent the SDHR from investigating such claims against Local 32BJ. SDHR contends that it has jurisdiction over such claims, and that, even in the event the Court finds the HRL preempted, the injunctive relief sought is unwarranted.

For the reasons that follow, Plaintiff's motion for declaratory judgment is granted, his request for a permanent injunction is denied, and Defendant's cross-motion for summary judgment is denied.

**I. Background**

The SDHR is responsible for the administration of the HRL, which prohibits various forms of discriminatory practices, including discrimination by labor organizations. Amended Joint Rule 56.1 Statement of Undisputed Facts ("JS") ¶ 2, ECF No. 69; N.Y. Exec. Law § 296(1)(c), (e), (1-a), (3)(a), (7), (19)(a).[3] The Local is an unincorporated organization which exists primarily for the purpose of collective bargaining and dealing with employers regarding grievances, labor disputes, and terms or conditions of employment. JS ¶ 5. Currently, the Local represents over 81,000 employees in New York State. JS ¶ 7. The Local is a "labor organization" within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and the HRL, N.Y. Exec. Law § 292(3). JS ¶¶ 5, 8.

Each collective bargaining agreement ("CBA") to which Local 32BJ is a party includes a mechanism for resolving disputes that may arise between the Local and the employer under the agreement, including disputes regarding discipline or termination of employees. JS ¶ 10. The Local may file a grievance regarding an action or inaction by the employer, and typically the CBA provides a procedure by which representatives of the parties attempt to resolve the dispute, often through

---

[3] The parties agree on the material facts underlying this dispute, and have submitted a stipulated joint statement of undisputed facts under Rule 56.1.

meetings. *Id.* If the dispute is not resolved to Local 32BJ's satisfaction, under the CBA it has a right to arbitrate the dispute. *Id.*

Union members notify the Local when they believe they have been treated unfairly, and the Local evaluates and investigates requests to file grievances, attempts to resolve grievances, and determines whether to demand arbitration of unresolved grievances. JS ¶ 11. In some cases, it decides not to demand arbitration over a disputed employee termination or disciplinary action. JS ¶ 12.

Employees who believe they have been the victims of unlawful discrimination, by an employer or a labor organization, may bring claims to the SDHR or the Equal Employment Opportunity Commission ("EEOC"), which is responsible for the administration of Title VII and other federal anti-discrimination laws. JS ¶ 17. The two agencies serve as each other's agents for receiving and investigating complaints, and when an employee files a complaint that contains both federal and state claims, it is assigned both a federal and state charge number. *Id.* Responsibility for handling claims is divided between SDHR and the EEOC through a Worksharing Agreement. *Id.*; Guardiola Decl. in Op. to Pl.'s Mot. for Prelim. Inj., Ex. A, ECF No. 21-1 ("Ex. A"). The vast majority of these complaints are filed by *pro se* complainants. JS ¶ 18.

The HRL requires SDHR to determine "whether it has jurisdiction and, if so, whether there is probable cause" to believe that the respondent(s) named in the complaint "engaged or [are] engaging in an unlawful discriminatory practice." JS ¶ 20; N.Y. Exec. Law § 297(2)(a). The SDHR's Rules of Practice provide that "[i]f the division finds, . . . with respect to any respondent or charge, that it lacks jurisdiction . . . , the complaint shall be dismissed as to such respondent, or charge," but, in practice, when multiple claims are raised against a single respondent and SDHR only has jurisdiction over some of them it will not sever claims, it will simply state in its final determination that it has no jurisdiction over certain claims. Downey Affirmation ¶¶ 43-47, ECF No. 43; JS ¶ 21, 9 N.Y.C.R.R. § 465.5(d)(1).

After a complaint is filed with SDHR, an intake specialist collects relevant information and documentation from the complainant, and an investigator gathers evidence and drafts a report outlining the issues and evidence in a case, as well as reasons for a "probable cause" or "no probable cause" determination. JS ¶¶ 22-25. The investigator or the investigator's supervisor then drafts a separate document known as a Basis for Determination that analyzes the facts and recommends an outcome. JS ¶ 26. A SDHR Regional Director then reviews the recommendations and makes the SDHR's determination as to both jurisdiction and the existence of probable cause. JS ¶ 27; 9 N.Y.C.R.R. § 465.8(a).

The Local has identified 23 complaints filed with the SDHR since mid-2009 in which the Local was alleged to have discriminated against an employee member and was named as a respondent.[4] JS ¶¶ 35, 49; Exs. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 30, 45, 55, 58, 61, 64, 67. Each of those complaints was filed against Local 32BJ in its capacity as the complainant's collective bargaining representative, and involved one or more allegations that the Local failed to demand arbitration, failed to handle an arbitration properly, or engaged in some other discriminatory conduct in its role as collective bargaining representative, in violation of the HRL. JS ¶ 35.[5] All but one of those complaints were dual-filed with the EEOC. *Id.*

The Local has consistently made written submissions to SDHR in connection with such complaints in which it argues that its duty of fair representation ("DFR") arising from the NLRA "preempted the SDHR's investigation and prosecution of the administrative complaint and deprived it of jurisdiction over such a complaint." JS ¶ 36. SDHR has disagreed, and has continued to investigate and issue final determinations in such cases. *Id.*; *see, e.g.*, Ex. 6. Notwithstanding the Local's position that SDHR lacks jurisdiction to pursue claims of breach of the duty of fair

---

[4] In one complaint, the Local was not initially named as a respondent but was later added in an amendment to the complaint. JS ¶¶ 39-40; Exs. 34, 35.

representation against it, it has had to expend resources to defend itself—170 hours of attorney time by members of its in-house legal department and over 30 hours of union staff members' time—in connection with the twenty-three complaints.  JS ¶ 45.

On November 14, 2014, Mr. Foster filed this lawsuit, and subsequently moved for a preliminary injunction enjoining SDHR from enforcing the HRL against Local 32BJ in its capacity as a collective bargaining representative, which motion this Court denied on February 3, 2015. Thereafter, the parties agreed that they would stipulate to and file a joint 56.1 statement of undisputed facts, and cross-moved for summary judgment.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In evaluating a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

The same standard applies to cross-motions for summary judgment.  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## III.  Discussion

The material facts in this case are undisputed.  Instead, the parties disagree over a specific, narrow, legal question:  does a union's duty of fair representation preempt the application of the HRL when the union is acting in its capacity as a collective bargaining representative?

### A. The Duty of Fair Representation

Unions owe the employees they represent a duty of fair representation in enforcing collective bargaining agreements. *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "[W]hen a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith," it breaches this duty. *Id.* at 190.

The DFR arises by implication under the NRLA. In *Steele v. Louisville & N.R. Co.*, the Supreme Court held that the Railway Labor Act's grant of authority to a union to serve as the exclusive bargaining representative of a class of employees simultaneously imposed upon the union "at least as exacting a duty to protect equally the interests of the members of the craft as the Constitution imposes upon a legislature to give equal protection to the interests of those for whom it legislates." 323 U.S. 192, 202 (1944). Several years later, the Supreme Court held that the DFR similarly applied to unions organized under the NLRA. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337 (1953). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. "This duty extends to both the negotiation of a collective bargaining agreement, and its enforcement and administration." *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998).

Because the DFR is "grounded in federal statutes," federal law governs claims premised on alleged breaches of the duty. *Vaca*, 386 U.S. at 177 (citing *Huffman*, 345 U.S. 330 (1953)); *see also Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495, 508 (E.D.N.Y. 2004) ("The federal interest in the duty of fair representation is of such importance that a duty of fair representation claim is governed exclusively by federal law even when brought in state court.") (citations omitted). The federal duty of fair representation will preempt state law unless a state claim can be "shown to arise wholly outside the ambit" of the DFR, "that is, unless it involved union activity that was peripheral to the

6

concern of the applicable federal statutes and presented only a tangential or remote potential conflict with the federal regulatory scheme." *Condon v. Local 2944, United Steelworkers of Am.*, 683 F.2d 590, 595 (1st Cir. 1982) (citing *Farmer v. United Bhd. Of Carpenters*, 430 U.S. 290, 301-02 (1977) *and Linn v. Plant Guard Workers*, 383 U.S. 53, 63 (1966)).

Since the Supreme Court decided *Vaca v. Sipes*, federal Courts of Appeals have consistently held that the DFR preempts substantive state law.[6] *Adkins v. Mireles*, 526 F.3d 531, 540 (9th Cir. 2008) (DFR "displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative"); *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) ("Where a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations."); *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1169 (5th Cir. 1989) ("Under *Vaca*, the NLRA duty of fair representation . . . completely preempts state law because of the congressional intent that federal law . . . entirely govern the duties which an NLRA collective bargaining representative owes, by virtue of its position as such, to the workers it represents in that capacity."); *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1170-71 (4th Cir. 1985) (DFR preempts state law causes of action including civil conspiracy, unlawful blacklisting, and interference with a contractual relationship); *Condon v. Local 2944, United Steelworkers of Am.*, 683 F.2d 590, 595 (1st Cir. 1982) (DFR preempts state law duty of care in conducting safety inspections); *see also May v. Shuttle, Inc.*, 129 F.3d 165, 179 (D.C. Cir. 1997) (DFR under the RLA preempts state law claim of fraud and deceit); *Oliva v. Wine, Liquor and Distillery Workers Union, Local One*, 651 F. Supp.

---

[6] When reviewing the case law delineating the preemptive power of federal labor law, it is important to distinguish the duty of fair representation—which arises under the NLRA and governs a union's obligations in negotiating and enforcing collective bargaining agreements—from § 301 of the Labor Management Relations Act ("LMRA")—which governs breaches of, and interpretation of, collective bargaining agreements. Although claims under these two different laws are frequently pleaded together, "[i]t is well established that a breach of the collective bargaining agreement is not required to establish a breach of the duty of fair representation." *Agosto v. Correctional Officers Benevolent Association*, 107 F. Supp. 2d 294, 304 (S.D.N.Y. 2000) (citations omitted). They are two separate federal laws, and there is separate jurisprudence developing the contours of the preemptive capabilities of each.

369, 371 (S.D.N.Y. 1987) (Sand, J.) (plaintiff's breach of contract claim against his union was a "recharacterization" of his federal fair representation claim and so was preempted).[7]

The DFR is stands as a "bulwark" against "arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca*, 386 U.S. at 182. There is no question that the DFR protects employees against discrimination: the doctrine was originally recognized in a case involving alleged racial discrimination against railroad workers by a union. *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 199 (1944) ("[W]e think that Congress, in enacting the Railway Labor Act and authorizing a labor union, chosen by a majority of a craft, to represent the craft, did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minority."); *see also Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184, 188 (E.D.N.Y. 2000) ("the duty of fair representation unquestionably forbids a union from discriminating against its members in its representative capacity") (citing *Vaca*, 386 U.S. at 190). Consequently, state laws—such as anti-discrimination laws—that "attempt to impose obligations on a union" that are "already required by the duty of fair representation" are preempted. *Marrero v. City of New York*, No. 02-cv-6634-DLC, 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003); *see also Cooper v. TWA Airlines, LLC*, 349 F. Supp. 2d 495, 508 (E.D.N.Y. 2004) (state law claims that are "mere refinements" of the DFR are preempted) (citing *Nellis v. Air Line Pilots Ass'n*, 805 F. Supp. 355, 360 (E.D. Va. 1992), *aff'd & reasoning adopted by*, 15 F.3d 50, 51 (4th Cir. 1994)).

Although "[t]he Second Circuit has not addressed the issue of whether the NYSHRL or NYCHRL are preempted by the duty of fair representation," the "vast majority" of cases in this

---

[7] *Maynard v. Revere Cooper Products, Inc.*, 773 F.2d 733 (6th Cir. 1985), and *Welch v. General Motors Corp.*, 922 F.2d 287 (6th Cir. 1990) are also frequently cited for this proposition. However, these cases discuss the duty of fair representation in conjunction with § 301 of the LMRA, not the NLRA. *See Welch*, 922 F.2d at 294 ("[s]ince appellant's state law claims against the Union were preempted by section 301, appellant's motion to remand was properly denied."); *Maynard*, 773 F.2d at 735 (a "section 301 claim for failure to provide fair and adequate representation" was time barred).

Circuit hold that the DFR preempts the HRL in situations where the union was acting in its capacity as the plaintiff's collective bargaining representative. *Holcombe v. U.S. Airways Group, Inc.*, 976 F. Supp. 2d 326, 338 (S.D.N.Y. 2013) (citing *Langford v. Int'l Union of Operating Eng'rs, Local 30*, 765 F. Supp. 2d 486, 507 (2011)); *Morillo v. Grand Hyatt New York*, No. 13-cv-7123-JGK, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014) ("[T]he weight of well-reasoned authority in this Circuit finds that claims against a union and its representative under the NYHRL and NYCHRL are subsumed by the duty of fair representation when the gist of the claim is the failure to represent the plaintiff in a fair and non-discriminatory manner."); *see also Winkfield v. Parkchester S. Condo. Inc.*, No. 11-cv-983-RA, 2013 WL 2626788, at *3 (S.D.N.Y. June 11, 2013) (allegations that union discriminated against plaintiff on the basis of his age and race by failing to properly represent him in proceedings preempted); *Fenn v. Verizon Commc'ns, Inc.*, No. 08-cv-2348-PGG, 2010 WL 908918, at *6 (S.D.N.Y. Mar. 15, 2010) (state law claims preempted because "to the extent that union representatives violated state laws by treating [plaintiff] differently than other members because of his gender or religion, they also violated the federal duty of fair representation"); *Cabrera v. New York City*, 436 F. Supp. 2d 635, 646 (S.D.N.Y. 2006) (plaintiff's HRL claim of discrimination based on age and national origin preempted); *Zuckerman v. Volume Servs. Am., Inc.*, 304 F. Supp. 2d 365, 372-73 (E.D.N.Y. 2004) (plaintiff's claim that union failed to properly pursue her grievance against her employer because of her disability was preempted); *Marrero v. City of New York*, No. 02-cv-6634-DLC, 2003 WL 1621921, at *3 (S.D.N.Y. Mar. 28, 2003) (plaintiff's claim under the HRL that his union failed to fairly represent him at grievance hearings because of his Puerto Rican ancestry preempted); *Agosto v. Corr. Officers Benevolent Ass'n*, 107 F. Supp. 2d 294, 310-11 (S.D.N.Y. 2000) (plaintiff's federal claims of sexual harassment and retaliation against union survived summary judgment, but HRL claim was preempted); *Rodolico v. Unisys Corp.*, 96 F. Supp. 2d 184, 188-89 (E.D.N.Y. 2000) (employer's lawsuit against union for its contribution to discriminatory practices preempted); *Snay v. U.S. Postal Service*, 31 F. Supp. 2d 92, 99-100 (N.D.N.Y. 1998) (plaintiff's HRL

claim on the basis of gender and disability preempted). *But see Parker v. Metro. Transp. Authority*, 97 F. Supp. 2d 437, 448-49 (S.D.N.Y. 2000).[8]

The DFR, however, does not preempt every state law claim of discrimination brought against a union. When a union is accused of discrimination based on actions unrelated to its role as a collective bargaining representative—for example, in its role as an employer, or as an operator of an apprenticeship program—the DFR "is not implicated because no 'representation' is involved." *Langford,* 765 F. Supp. 2d at 509 (DFR did not preempt HRL in case involved alleged discriminatory action taken by union in operating its apprenticeship program).

Against this backdrop, SDHR invites the Court to disregard the overwhelming weight of precedent and to conclude instead that the DFR does not preempt state anti-discrimination law.

### B. The DFR Preempts the HRL

The Supremacy Clause, the foundation upon which preemption doctrine is built, provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. IV, cl. 2; *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Altria Group*, 555 U.S. at 76 (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). There are "three familiar forms" of preemption: express preemption, conflict preemption, and field preemption. *Sullivan v. Am. Airlines, Inc.*, 424

---

[8] The two contrary decisions in this Circuit concluded that the holding in *Snay* conflicted with *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), in which the Supreme Court held that fair representation claims are actionable under Title VII. *Parker*, 97 F. Supp. 2d at 448-49; *Bryant v. Verizon Commc'ns, Inc.*, 550 F. Supp. 2d 513, 526-27 (S.D.N.Y. 2008) (citing *Parker*). As discussed, infra, in Section III.B, fair representation claims are actionable under Title VII; however, the fact that federal discrimination claims are actionable does not save *state law* discrimination claims from preemption. *See Willis v. Verizon New York, Inc.*, No. 11-cv-5078-JG, 2012 WL 2370125, at *5 (E.D.N.Y. June 22, 2012) (explaining that preemption operates with respect to state laws, and thus state law claims are preempted by federal labor law although federal claims are not).

F.3d 267, 273 (2d Cir. 2005) (citations omitted). These three forms of preemption are affirmative defenses to state claims, and may be referred to as "ordinary," or "defensive," preemption.[9] *Id.*

The NLRA does not expressly preempt state law, nor do the parties argue that enforcement of the HRL conflicts with federal law—rather, the DFR has been held to preempt state laws because "[a] union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" comprise an area in which "Congress has occupied the field and closed it to state regulation." *Condon v. Local 2944, United Steelworkers of Am.*, 683 F.2d 590, 594-95 (1st Cir. 1982) (internal quotation marks and citation omitted).

SDHR argues that, despite the extensive case law to the contrary, the DFR does not preempt the HRL because (1) *Vaca v. Sipes* has been misread, since, SDHR asserts, the *Vaca* court dealt only with federal claims and did not discuss preemption of state claims, and (2) the enactment of Title VII of the Civil Rights Act of 1964, which provides for protection against discrimination by unions, shows that Congress did not intend for the DFR to preempt state anti-discrimination law.

With respect to *Vaca v. Sipes*, SDHR contends that no state law claim had been alleged in that case, and that the Supreme Court did not discuss the preemption of state law claims by the DFR.[10] Def.'s Br. 14. This is incorrect. The underlying claim in *Vaca v. Sipes* came about when an

---

[9] In contrast, of course, under the doctrine of complete preemption "certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e. completely preempted." *Sullivan*, 424 F.3d at 272 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Section 301 of the Labor Management Relations Act, which provides for federal jurisdiction over breach of contract suits when the contract at issue is a collective bargaining agreement, and which is often pleaded alongside DFR claims, is one such statute. *See Franchise Tax Bd. v. Const. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983). Indeed, at least two Courts of Appeals, and several district courts in this Circuit, have concluded that the DFR, like § 301, preempts state law claims completely—that is, if the complaint pleads a state law claim that is preempted by the DFR it may be construed as raising a claim based on the DFR and removed to federal court. *See BIW Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of Am.*, 132 F.3d 824, 831-32 (1st Cir. 1997); *Richardson*, 864 F.2d at 1169; *Walsh v. Int'l Broth. of Elec. Workers Local 503*, 62 F. Supp. 3d 300, 302-03 (S.D.N.Y. 2014); *Morillo v. Grand Hyatt New York*, No. 13-cv-7123-JGK, 2014 WL 3498663, at *4 (S.D.N.Y. July 10, 2014). But removal is not at issue in this case, and this Court need not reach the question whether the DFR completely preempts the HRL.

[10] As SDHR correctly points out, the primary holding in *Vaca v. Sipes* concerned the doctrine of *Garmon* preemption— whether the NLRB has jurisdiction over a claim to the exclusion of both state and federal courts. However, prior to its discussion of *Garmon* preemption it was necessary for the Court to decide whether the plaintiff's claims arose under state or federal law, and, as discussed, it held that they were federal claims arising under the DFR.

employee, who wished to return to work after a period of sick leave and after he was cleared to work by his family doctor, was nonetheless discharged by his employer for poor health. 386 U.S. at 174-75. The employee's union pursued his grievance through several steps, but ultimately chose not to take it to arbitration, and the employee sued. *Id.* at 175-76. Before the Supreme Court, the Plaintiff-Respondent argued that his claim was "an uncomplicated action by an agent against his principal, under Missouri state law" and that "efforts to twist and torture this into an action under federal statutes" were "not in accord with the pleadings." Brief for Respondent, *Vaca v. Sipes*, 386 U.S. 171 (1967), 1966 WL 87665, at *4-5. The Supreme Court disagreed. At the beginning of its decision, the Court said that it was "obvious" that the complaint "alleged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs [this] cause of action." *Vaca*, 386 U.S. at 177.

The premise of SDHR's argument—that *Vaca* did not involve a state law claim—is simply not supported by the record.[11] SDHR's legal analysis has not uncovered a nuance overlooked by the many courts and commentators that have assessed *Vaca*'s preemptive effect; instead SDHR's argument appears to be based on an incomplete understanding of the issues presented to the Court in *Vaca*. As the Fifth Circuit recognized in the clearest possible terms, "[i]n *Vaca v. Sipes*, 386 U.S. 171 (1967), the Court further held that this federal duty of fair representation preempted state substantive law." *Richardson v. United Steelworker of Am.*, 864 F.2d 1162, 1166 (5th Cir. 1989). The Court is not persuaded by SDHR's argument that the conclusion reached by Fifth Circuit, and every other Circuit to have addressed the issue, is premised on a fundamental misreading of *Vaca*.

SDHR's Title VII argument fares no better. In essence, SDHR argues that because Title VII prohibits discrimination by labor organizations, 42 U.S.C. § 2000e-2(c), and Title VII does not

---

[11] The Court: So, your understanding of *Vaca* is that it did not involve a union employee bringing a Missouri state law claim?
SDHR: That's my understanding based on the language of the Supreme Court's determination.
Tr. of Oral Arg. at 6-7.

preempt state anti-discrimination laws, 42 U.S.C. § 2000e-7, another federal law—the DFR—does not preempt state anti-discrimination law. But the fact that Title VII explicitly preserves the HRL from preemption by that statute does not protect the HRL from preemption by all other federal laws—a conclusion clearly commanded by the text of the statutory provision SDHR cites in support of its argument.

Title VII provides that

> *Nothing in this subchapter* shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this chapter.

42 U.S.C. § 2000e-7 (emphasis added). Nothing in the text of this provision supports SDHR's contention that Title VII prevents other federal laws from preempting the HRL. To the contrary, the language of this provision is expressly limited to preserve state laws from the effect of Title VII itself. The savings clause states that "[n]othing in this subchapter" overrides state anti-discrimination laws. Title VII is included in that subchapter; the NLRA is not. The interpretation of the clause advanced by SDHR—that the clause preserves state anti-discrimination laws from modification by *any* federal law—is not supported by the text. And SDHR has not cited any authority in support of its conclusion that the savings clause in the statute should be read as expansively as it proposes—which is unsurprising, given its plain language.[12]

Title VII and the DFR co-exist. "It is well established that a union's duty breach of its duty of fair representation may subject it to liability under Title VII." *Agosto v. Corr. Officers Benevolent*

---

[12] The Court also finds unpersuasive SDHR's argument that because Title VII was enacted in 1964, three years before the Supreme Court's decision in *Vaca v. Sipes*, Title VII's savings clause must preserve the HRL from the impact of federal law other than Title VII. Congress has modified Title VII multiple times in the half-century since *Vaca*. *See, e.g.*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 §3(4) (1991) (explaining that one purpose of these amendments to the Civil Rights Act was "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination."). Aware of courts' consistent findings regarding the preclusive effect of *Vaca*, Congress has not acted to modify the limited savings clause in Title VII to protect state anti-discrimination laws from preemption by other federal law.

*Ass'n*, 107 F. Supp. 2d 294, 303 (S.D.N.Y. 2000) (collecting cases); *see also Fowlkes v. Ironworkers Local 40*, 790 F.3d 378 (2d Cir. 2015) (holding that a *pro se* plaintiff who had stated a claim against his union under Title VII had also stated a claim for breach of the duty of fair representation). "The duty of fair representation and Title VII plainly overlap in that they both prohibit discrimination," and, in fact, in order to state a Title VII claim against a union based upon its failure to represent a member, the plaintiff must plead a breach of the DFR. *Agosto*, 107 F. Supp. 2d at 304-305 (discussing multiple formulations of the elements required to state a claim against a union under Title VII, all of which include pleading a breach of the DFR).

Likewise, Title VII and the HRL complement each other. "State laws obviously play a significant role in the enforcement of Title VII." *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 101 (1983) (citation omitted). As SDHR points out, and as discussed in more detail below, in Section III.C, SDHR and the EEOC have entered into a Worksharing Agreement that empowers SDHR to act as the EEOC's agent for receiving and processing complaints of discrimination. Ex. A, §§ II-III.

In support of the proposition that the interplay between Title VII and the HRL prevents preemption by the DFR, defendant cites *Shaw v. Delta Air Lines*, in which the Supreme Court addressed the relationship between the Employee Retirement Income Security Act of 1974 ("ERISA"), Title VII, and the HRL. 463 U.S. 85 (1983). The *Shaw* court considered cases in which employees claimed discrimination in connection with a benefit plan, and considered whether ERISA preempted the HRL in such cases. *Id.* at 92-95. ERISA contains a provision that provides that it "shall not 'be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States.'" *Id.* at 100 (citing 29 U.S.C. § 1144(a)). The *Shaw* court concluded that because of "the importance of state fair employment laws" to the enforcement of Title VII, *federal* law would be impaired if ERISA preempted claims brought under the HRL. *Id.* at 102, 108-09.

The NLRA does not contain equivalent language. Moreover, in contrast to the situation in *Shaw*, the federal law at issue in this case—the NLRA, and specifically the DFR—does not impair

14

the implementation Title VII: the DFR works in tandem with Title VII and a breach of the DFR is an element of Title VII claims of discrimination against unions acting as collective bargaining representatives. *Agosto*, 107 F. Supp. 2d at 304-05.[13]

Lastly, *Tisdale v. United Association of Journeymen & Apprentices of Plumbing & Pipefitting Industry of the United States and Canada* and *Wrobbel v. Asplundh Construction Corporation*, cited by defendant, are not to the contrary. Those cases discuss the doctrine of "complete preemption," an exception to the well-pleaded complaint rule; they do not support the conclusion that the DFR does not preempt state anti-discrimination law. In *Tisdale*, the defendant union accused of racial discrimination attempted to remove the lawsuit from state to federal court under § 301 of the LMRA. 25 F.3d 1308 (6th Cir. 1994). The Sixth Circuit noted that "preemption and removal are related but distinct concepts," and held that because the dispute was not "fundamentally a labor case," but a discrimination case, it could not be removed to federal court on the basis that it required interpretation of the collective bargaining agreement. *Id.* at 1312-13. The *Tisdale* court did not mention the duty of fair representation or whether it preempted the Michigan civil rights statute at issue. The *Wrobbel* court did discuss the duty of fair representation and concluded that removal was not allowed under the DFR, but it expressly stated that the DFR could still preempt state law claims—it was just a defense for the state court to consider. 549 F. Supp. 2d 868, 875 (E.D. Mich. 2008).

---

[13] Typically, the standard of proof for claims against employers under the HRL and Title VII is the same. *See, e.g.*, *DeMarco v. CooperVision, Inc.*, 369 Fed. App'x 254, 255 (2d Cir. 2010). Title VII claims against unions acting in their representative role, however, are held to a higher standard: in order for a union member to maintain a claim against his or her union, she must plead and prove that the union breached the DFR, and a union action will only be held to be arbitrary under the DFR if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Agosto*, 107 F. Supp. 2d at 303 (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 76 (1991)). If the Court were to accept SDHR's proposal, and find that the DFR did not preempt the HRL, the HRL would support liability in a broader range of cases than Title VII, as Title VII incorporates the DFR and the HRL would not. Thus, Local 32BJ's New York members might be able to sustain a cause of action under the HRL even in situations where there was no breach of the DFR—and such an action might be unavailable to union members in other jurisdictions. Preemption doctrine exists to prevent exactly these types of inconsistencies in labor law.

In sum, the DFR preempts the HRL.  In addition, the synergies between Title VII and the DFR, and between Title VII and the HRL, do not prevent the DFR from preempting the HRL.

This conclusion does not leave employees who are victims of discrimination without recourse, whether the discrimination is perpetrated by their employer or their union.  The fact that the DFR preempts the HRL merely means that when a union discriminates in its role as a collective bargaining representative, the aggrieved party has recourse under Title VII and the DFR.  When a union discriminates in a context outside of its role as a collective bargaining representative—for example, against one of its own employees—the aggrieved party has recourse under Title VII and the HRL.

The Court finds that the duty of fair representation arising from the NLRA preempts the HRL to the extent that the claimed discrimination arises from acts or omissions of a labor organization acting in its role as a collective bargaining representative under the NLRA.  Plaintiff is entitled to declaratory judgment regarding the preemptive effect of the DFR.

**C.  Injunctive Relief Is Not Appropriate**

The Local requests that the Court enter permanent injunctive relief to protect it from unwarranted investigation by SDHR.  Specifically, it asks that the Court enter a remedial order including a protocol that SDHR would be required to adhere to in handling complaints against the Local.  The proposed ten-step protocol would require SDHR to designate a specific attorney to review all complaints naming Local 32BJ or one of its officers as a respondent, and, if it is unclear from the face of the complaint, to follow up with the complainant as to whether he or she was ever employed by or sought to be employed by the local. Pl.'s Br. 18-21.  The protocol envisages the dismissal of *all* claims filed with SDHR against the Local—unless the complainant was a union employee—without investigation.  As set forth above, the Court agrees with the Local that the DFR preempts certain HRL claims.  The Court does not, however, agree that the Local is entitled to avoid

any investigation by SDHR, and the concomitant use of its own resources, as the Local's suggested protocol would mandate.

Injunctive relief "is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Local contends that the "needless expenditure of union attorney and staff resources" to defend itself in SDHR investigations constitutes irreparable injury and warrants a permanent injunction.[14] Pl.'s Br. 13. To remedy this injury, it suggests the protocol outlined above. *Id.* 18-21. SDHR counters that the Local has failed to show irreparable harm and that the balance of equities and the public interest weigh against a permanent injunction. Def.'s Br. 21-22.

The Court agrees with SDHR: the Local has not made the requisite showing to justify the entry of a permanent injunction. Although the Court understands that Local attorneys and staff are busy with the myriad legal tasks inherent in running a union, at the same time the Local has provided evidence that only 170 hours of attorney time has been devoted to these cases over the past six (or nearly seven) years, and that time was divided among eight employees. That means that, on average, each of those eight employees spent three and a half hours per year dealing with claims that were preempted by the DFR. On the other hand, SDHR has an interest in ensuring that it is able to investigate claims involving the Local, which can include overlapping and non-preempted federal claims together with preempted HRL claims.

---

[14] The Local acknowledges that the Eleventh Amendment bars it from collecting monetary damages from SDHR. *See* Pl.'s Br. 17.

17

The protocol proposed by Local 32BJ provides for a mechanism to determine whether a complainant ever was or sought to be a Local 32BJ employee—if not, the union asserts, any discrimination would fall outside of the DFR, and therefore state law claims of discrimination would not be preempted. The proposed protocol might work for the "plain vanilla" case where only Local 32BJ is named and all of the allegations against it include actions undertaken as a labor representative, implicating the DFR. However, the Local's protocol ignores a variety of other situations in which some investigation by the SDHR might be appropriate.

First and foremost, the proposed protocol ignores the reality that the vast majority of complaints filed with SDHR are filed *pro se*, and that it may be necessary for SDHR to investigate before it can determine whether the claim against the Local is preempted by the DFR. In addition, the Local could be accused of discrimination outside of its role as a collective bargaining agent, such as in the context of operating an apprenticeship program or another form of community outreach. *See Langford*, 765 F. Supp. 2d at 509. Lastly, both the Local and the complainant's employer are often named together as respondents and the claims against them may be intertwined—and although HRL claims against the Local may be preempted, the Local or one of its officers might, as a fact witness, have information that is relevant to the HRL's investigation against the employer.[15] Despite the Local's reassurances, the Court is concerned that a protective order would be improperly invoked to curtail appropriate investigative efforts in such circumstances. Overall, given the limited amount of time that Local attorneys and staff have historically spent on these matters, and the potentially complicated nature of the claims the SDHR is called upon to investigate, the balance of equities does not weigh in favor of an injunction.

---

[15] The Court also notes that the protocol envisions dismissal of any complaint over which SDHR determines it does not have jurisdiction, even though the Worksharing Agreement between SDHR and the EEOC suggests that the more appropriate course of action would be for SDHR to transfer the charge(s) to the EEOC. Ex. A ¶¶ II.A, II.C.

18

Most importantly, the public interest in effective administrative enforcement of anti-discrimination laws weighs against issuing a permanent injunction. SDHR's Worksharing Agreement with the EEOC is in place "to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate New York State and Federal law." Ex. A ¶ I.B (emphasis added). The Court does not believe that it is in the public interest to upset the process established by the state and federal governments to protect worker's rights. Based on its review of the record, it is apparent to the Court that there will be some situations in which at least preliminary investigation is necessary to determine whether and over which claims the SDHR may exercise jurisdiction. Because each complaint is unique, the Court cannot assess at which point in any given matter SDHR will be able to conclude with certainty that the case at hand implicates only the DFR. The public interest will not be served by the imposition of a burdensome permanent injunction and accompanying protocol that puts the cart before the horse, so to speak, by limiting SDHR's investigation to the point it cannot make a jurisdictional determination.[16] The Court believes that the public interest will be better served by allowing the parties to process future complaints in a more flexible manner—mindful of the preclusive effect of the DFR recognized by this opinion.

---

[16] Because the Court denies the Local's request for a permanent injunction, it is not necessary to reach the parties' arguments regarding abstention with respect to the complaints currently pending before SDHR.

## IV. CONCLUSION

For the reasons above, Plaintiff's motion for summary judgment is granted insofar as it requested declaratory judgment, but Plaintiff's request for a permanent injunction is denied. Defendant's motion for summary judgment is denied. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: May 12, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge